**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000286**
**29-APR-2024**
**08:04 AM**
**Dkt. 50 SO**

NO. CAAP-19-0000286

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

NĀ PAPAʻI WAWAE ʻULAʻULA, an unincorporated association,
RANDAL DRAPER, individual, and WEST MAUI PRESERVATION
ASSOCIATION, a Hawaiʻi nonprofit organization,
Plaintiffs-Appellants,
v.
DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAIʻI,
Defendant-Appellee,
and
DOES 1-27, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 17-100483(3))

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

Plaintiffs-Appellants Nā Papaʻi Wāwae ʻUlaʻUla, an unincorporated association, Randal Draper (deceased), an individual, and West Maui Preservation Association, a Hawaiʻi nonprofit organization (collectively, **Appellants**), appeal from the March 11, 2019 Final Judgment (**Judgment**) entered by the Circuit Court of the Second Circuit (**Circuit Court**),[1] in favor of Defendant-Appellee Department of Land and Natural Resources, State of Hawaiʻi (**DLNR**). Appellants also challenge the Circuit Court's: (1) January 24, 2019 Order Denying [Appellants'] Motion

_____

[1] The Honorable Joseph E. Cardoza presided.

for Summary Judgment; and (2) January 24, 2019 Order Granting [DLNR's] Motion for Summary Judgment.

Appellants raise a single point of error on appeal, contending that the Circuit Court erred in concluding that the issuance or renewal of six Kāʻanapali commercial use permits (**CUPs**) does not constitute an "action" under Hawaii Revised Statutes (**HRS**) Chapter 343, the Hawaiʻi Environmental Policy Act (**HEPA**).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellants' point of error as follows:

The Circuit Court determined that the issuance or renewal of the six CUPs at issue in this case did not constitute an "action" under HEPA because of the limited nature and scope of the CUPs. The Circuit Court noted that there are substantial differences here from the activities permitted by the commercial aquarium collection permits in Umberger v. DLNR, 140 Hawaiʻi 500, 513, 403 P.3d 277, 290 (2017). Appellants argue that DLNR's issuance of the CUPs constitutes a HEPA action because the CUPs were a "planned undertaking of commercial activities involving the use of passenger boats and/or thrillcraft at Kāʻanapali beach and ocean waters," making them a "program or project."[2]

---

[2]     HRS § 200-23 (2011) defines "thrill craft," in pertinent part, as:

"Thrill craft" means any motorized vessel that falls into the category of personal watercraft, and which:

(1)     Is generally less than thirteen feet in length as manufactured;

(continued...)

2

"HEPA defines 'action' as 'any program or project to be initiated by any agency or applicant.'" Carmichael v. BLNR, 150 Hawaiʻi 547, 568, 506 P.3d 211, 232 (2022); see also HRS § 343-2 (2010). "'Program' is generally defined as 'a plan or system under which action may be taken toward a goal' [and] '[p]roject' is defined as 'a specific plan or design' or 'a planned undertaking.'" Umberger, 140 Hawaiʻi at 513, 403 P.3d at 290. "An important preliminary step in assessing whether an 'action' is subject to environmental review is defining the action itself." Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 306 n.6, 167 P.3d 292, 299 n.6 (2007).

HRS § 200-4(a)(6)(A)(i),(ii) (2011) authorizes DLNR to require permits and fees for "[t]he mooring, docking, or anchoring of recreational and commercial vessels or the launching of recreational or commercial vessels at small boat harbors, launching ramps, and other boating facilities," or "[o]ther uses of these facilities." Hawaiʻi Administrative Rules (**HAR**) § 13-231-3(a)(6) provides that a boating permit "authorizes the owner of a commercial vessel to engage in commercial activities as specified in the permit." Thus, the activities authorized by the

---

[2](...continued)
      (2)     Is generally capable of exceeding a speed of twenty miles per hour;

      (3)     Can be operated by a single operator, but may have the capacity to carry passengers while in operation; or
. . . .

The term includes, but is not limited to, a jet ski, waverunner, wet bike, surf jet, miniature speed boat, hovercraft[.]

CUPs are the activities specified in the CUPs.  The CUPs

authorize, in pertinent part:

> CUPs T-01 and 02 authorize "THRILL CRAFT RENTALS/SHUTTLING PASSENGERS TO & FROM KAANAPALI BEACH & THRILL CRAFT PLATFORM WITHIN THE KAANAPALI THRILL CRAFT OPERATING AREA."[3]
>
> CUP C-06 authorizes "PASSENGERS FOR HIRE/EMBARKING & DISEMBARKING COMMERCIAL PASSENGERS ON KAANAPALI BEACH SEAWARD OF THE HIGH WATER MARK, WITHIN THE INGRESS EGRESS AREAS ZONES/CATAMARAN BEACH LANDINGS."
>
> CUP C-01 authorizes "EMBARKING & DISEMBARKING PASSENGERS ON KAANAPALI BEACH SEAWARD OF THE HIGH WATER MARK.  CATAMARAN SAILING CHARTERS & BEACH LANDINGS."
>
> CUP C-10 authorizes "PASSENGERS FOR HIRE/EMBARKING & DISEMBARKING COMMERCIAL PASSENGERS FROM KAANAPALI BEACH, WITHIN THE INGRESS EGRESS AREAS."

In Umberger, the permits at issue authorized extraction

of aquatic life, authorized recreational permittees to collect

1,825 fish or other aquatic life within a one-year period, and

authorized commercial aquarium collection permittees to collect

an unlimited number of fish and other aquatic life.  140 Hawaiʻi

at 513, 403 P.3d at 290.  The Hawaiʻi Supreme Court determined

that the permitted activities qualified as an "action" and

reasoned:

> The course and scope of conduct allowed by both recreational and commercial aquarium collection permits issued under HRS § 188-31 and DLNR's administrative scheme encompass activity that qualifies as a "program" or "project."  The activity is a "specific plan" or "a planned undertaking" - and, therefore, a "project" - because it involves the systematic and deliberate extraction of aquatic life using procedures, equipment, facilities, and techniques authorized or required by HRS § 188-31 and related administrative rules for the specific purpose of holding captive such aquatic life for aquarium purposes in order to earn profit (in the case of commercial permit holders) or for non-commercial use (in the case of recreational permit holders).
>
> In the same vein, both recreational and commercial aquarium collection are "programs" within the plain meaning of that word:  the "plan or system under which action may be taken" is the purposeful and methodical extraction of

---

[3]    CUP T-03 authorizes exactly the same type of commercial activity as T-01 and T-02, but some of the language is reworded.

> aquatic life from State waters through the use of fine meshed nets and traps and the transfer of such aquatic life to facilities that are capable of keeping the collected aquatic life alive. The "desired goal" is to take aquatic life from its habitat and hold it in a state of captivity for aquarium purposes, . . . in order to earn profits (in the case of commercial permit holders) or for non-commercial use (in the case of recreational permit holders). Additionally, the method by which extraction is accomplished involves instruments and techniques that enhance the efficiency and amount of the collection. Accordingly, aquarium collection conducted under permits issued pursuant to HRS § 188-31 and DLNR's administrative rules is a "program or project" and therefore constitutes a HEPA "action."

Id. at 514-15, 403 P.3d at 291-92 (footnote omitted).

In Carmichael, the supreme court similarly held that the activity authorized by DLNR's revocable permits – the "development, diversion, and use of [the] water located across approximately 33,000 acres of State land in Maui" – constituted an "action" under HEPA. 150 Hawaiʻi at 569, 506 P.3d at 233 (internal quotation marks omitted). While DLNR's continuations of the revocable permits were not HEPA "actions," the applicant's permitted activity, *i.e.* developing, diverting, and using water across large areas of land did constitute an "action." Id. The supreme court reasoned that the permitted activity constituted an "action" because it qualified as a "project" or a "program," stating:

> The activity is a "specific plan" or "planned undertaking" - and is, therefore, a "project" - because the permits facilitated a deliberate and coordinated effort by [defendants] to use their water system to deliver water and manage water use for the permitted areas. The activity is also a "plan or system under which action may be taken" - and is, therefore, a "program" - because although each revocable permit corresponded to a separate geographical area, the four areas "were all a part of the same collection and delivery system extending from Nahiku to Honopou" and the permits worked in conjunction to meet [defendants'] (and their customers') water needs.

Id. (internal citations omitted).

In Umberger, the supreme court emphasized that not all activities under a permitting scheme qualify as a "program" or "project" and thus constitute an "action." 140 Hawaiʻi at 519, 403 P.3d at 296. In that case, the Intermediate Court of Appeals (**ICA**) had determined that the aquarium collection permitting scheme did not constitute an "action" in part because "[a]ppellants offer no rational distinction or logical reason why HEPA environmental review procedures should be required for aquarium fish permits," but not for licenses or permits such as "hunting licenses, camping permits, collecting permits, access permits, commercial activity permits (*e.g.,* beach weddings), commercial harvest permits, and marine event permits." Umberger v. DLNR, 138 Hawaiʻi 508, 517, 382 P.3d 320, 329 (App. 2016), *aff'd in part*, *rev'd in part*, Umberger, 140 Hawaiʻi 500, 403 P.3d 277 (2017). In rejecting this rationale, the supreme court provided that "[t]he activities authorized by the permitting schemes that the ICA utilized in its analysis are not effective points of comparison given their substantial differences, both in magnitude and nature, from the activities sanctioned by aquarium collection permits." Umberger, 140 Hawaiʻi at 519, 403 P.3d at 296. The supreme court stated that "many of the activities under the permitting regimes that the ICA identified do not appear to be 'programs' or 'projects.'" Id.

In Carmichael, the supreme court concluded that the permitted activities constituted a "program" and "project" because the four permits were all part of the same collection and delivery system that authorized Alexander & Baldwin, Inc. (**A&B**)

and East Maui Irrigation Co. (**EMI**)[4] to move 100 million gallons of water in East Maui to another A&B subsidiary. See 150 Hawaiʻi at 217, 233, 506 P.3d at 553, 569 (noting that the permitted activity was a "planned undertaking" because "the permits facilitated a deliberate and coordinated effort by [the defendants] to use their water system to deliver water and manage water use for the permitted areas."). In Carmichael, the supreme court refused to "opine on the validity of other permits not before the court" because the "duration, magnitude, and nature of the uses authorized by the revocable permits here . . . may be distinguishable from other, smaller-scale uses similarly authorized by the DLNR." Id. at 571-72, 506 P.3d at 235-36.

Here, the CUPs "facilitated a deliberate and coordinated effort" for each permittee to engage in commercial activity in Kāʻanapali waters for profit through the use of authorized equipment such as thrill craft and other vessels, procedures, and techniques. See id.; Umberger, 140 Hawaiʻi at 514, 403 P.3d at 291. Thus, we conclude that the activities authorized by the six CUPs constitute action under HEPA.

The Circuit Court erred in concluding that the activities authorized by the CUPs do not qualify as a program or project constituting actions under HEPA.

---

[4]     EMI is a subsidiary of A&B. Carmichael, 150 Hawaiʻi at 553 n.3, 506 P.3d at 217 n.3.

For these reasons, the Circuit Court's March 11, 2019 Judgment is vacated, and this case is remanded to the Circuit Court for further proceedings.[5]

DATED: Honolulu, Hawaiʻi, April 29, 2024.

On the briefs:

Lance D. Collins,
for Plaintiffs-Appellants.

Daniel A. Morris,
Deputy Attorney General,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

[5]    We reiterate that the only issue before the court on this appeal is whether the issuance or renewal of the six Kāʻanapali CUPs constitutes an action under HRS Chapter 343, and therefore we do not address other related issues, e.g., whether a permittee is exempt from preparing an environment assessment under HRS § 343-6(a)(2) (2010).